[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12632
Non-Argument Calendar

_____

D.C. Docket No. 5:17-cv-00387-MTT

HJALMAR RODRIGUEZ,

Plaintiff-Appellant,

versus

WILLIAM POWELL,
Deputy Warden of Security, GDCP,
RUFUS LOGAN,
Unit Manager, GDCP,
DEREK CLUPPER,
COII, GDCP,
LIEUTENANT MICHAEL KYLES,
GDCP,
DR. EDWARD BURNSIDE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(April 29, 2021)

Before MARTIN, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

Hjalmar Rodriguez, a Georgia state prisoner who proceeded *pro se* throughout the proceedings below, appeals after the district court entered judgment against him on his claims against several prison officials for excessive force, retaliation, and deliberate indifference to medical needs under 42 U.S.C. § 1983. On appeal, Rodriguez, now represented by court-appointed counsel, challenges several pretrial matters, arguing that the district court erred or abused its discretion by setting aside a clerk's default as to one defendant, failing to review the magistrate judge's denial of a motion to compel discovery, and refusing to appoint an expert witness. After careful review, we affirm.

## I.

We begin with an overview of Rodriguez's pertinent claims, which arise from three separate incidents. First, Rodriguez asserted claims of excessive force and deliberate indifference to his medical needs stemming from a hand injury that he suffered on December 19, 2013, while incarcerated at the Georgia Diagnostic and Classification Prison ("GDCP"). Rodriguez claimed that he placed his hand through the "tray flap," a small opening in his cell door though which food trays and other items were passed, as an act of "peaceful protest" to try to get Defendant Derek Clupper to respond to his pleas for medical assistance. But Clupper slammed the

2

tray flap closed onto his hand without adequate warning, causing him to suffer pain, swelling, bruising, and a broken bone.  Rodriguez further alleged that Burnside failed to provide adequate follow-up medical care for his injuries.

Second, Rodriguez claimed that, after the trap-flap incident, several prison officials—Defendants Clupper, Michael Kyles, William Powell, and Rufus Logan—retaliated against him for his use of the prison grievance system.  The alleged retaliatory conduct included (a) issuing a "falsified" disciplinary report that resulted in Rodriguez's transfer to a more restrictive cellblock; (b) resorting to a disciplinary report, as opposed to some lesser disciplinary measure; and (c) keeping Rodriguez in the more restrictive cellblock even after the disciplinary report was dismissed for "factual statement not being supportive."

Third, Rodriguez alleged that Burnside provided inadequate medical care for a bullet that had been left in his upper left thigh after a shooting in 1997.  According to Rodriguez, this bullet moved over time down his leg and toward the back of his knee, causing him to suffer pain on movement.  Eventually, the bullet ruptured his skin, and he was able to extract the bullet himself, although he developed an infection.  Rodriguez asserted that Burnside was deliberately indifferent by delaying the surgical removal of the bullet and by prescribing only ibuprofen, a medication that causes him painful side effects.

Of these claims, the district court granted summary judgment on one claim—for deliberate indifference against Burnside based on the hand injury—but permitted the remaining claims to go to trial. A jury trial was held in June 2019, with Rodriguez representing himself. The jury returned a verdict against Rodriguez on each claim, finding that Clupper did not use excessive force against him; Clupper, Kyles, Powell, and Logan did not retaliate against him; and Rodriguez did not have an objectively serious medical need related to the bullet embedded in his leg. The district court entered judgment on the verdict, and Rodriguez timely appealed. We appointed counsel for the appeal.[1]

Rodriguez, though court-appointed counsel, now argues that the district court erred or abused its discretion in three ways: (1) granting Burnside's motion to set aside the default entered against him; (2) failing to rule on Rodriguez's objections to a magistrate judge's order denying his motion to compel the production of certain medical records, including x-rays; and (3) refusing to appoint an expert witness to assist Rodriguez with his excessive-force and deliberate-indifference claims. He also contends that this Court sitting *en banc* should hold that the Prison Litigation Reform Act ("PLRA") does not bar inmates without physical injury from recovering punitive damages. We address each argument in turn.

---

[1] We express our appreciation to appointed counsel in this case, Timothy Butler of Troutman Pepper Hamilton Sanders LLP, for his able and vigorous representation of Rodriguez on appeal.

## II.

We start with the decision to vacate the clerk's default as to Burnside.

## A.

First, the relevant background.  In July 2015, the district court permitted Rodriguez to amend his complaint to add claims against Burnside, who was not originally named as a defendant.  At that time, discovery was stayed pending a ruling on the other defendants' motion to dismiss.  The court ordered personal service on Burnside, and in early November 2015 a U.S. Marshal filed a "Process Receipt and Return" reflecting that Burnside was personally served on October 27, 2015.

On January 5, 2016, the district court issued an order administratively terminating pending motions, including the defendants' motion to dismiss, due to Rodriguez's interlocutory appeal of an order denying a preliminary injunction.  The court advised that the parties could renew the motions once the appeal was resolved.

Around two weeks later, Rodriguez moved for clerk's entry of default as to Burnside based on his failure to respond to the amended complaint.  The court granted that motion, and the clerk entered default as to Burnside on January 21, 2016.

The next day, January 22, Burnside filed a motion to vacate the clerk's default. He contended that he had good cause for his failure to respond to the amended complaint, citing two reasons:  (1) a misunderstanding as to whether he was entitled to representation by the Office of the Attorney General ("AG's Office"), as were all

5

other defendants in the case; and (2) his lack of actual notice about the lawsuit, despite the proof of service reflecting he was personally served. Rodriguez responded and requested discovery he claimed was relevant to the default issue.

Following an evidentiary hearing, supplemental briefing, and a motion for default judgment by Rodriguez, a magistrate judge vacated the clerk's default as to Burnside on April 25, 2016. The magistrate judge found that Burnside's denial of receiving personal service was not credible in light of testimony from the Marshal who made personal service on him, and that Burnside failed to send a request for representation to the A.G.'s Office.

Nevertheless, Burnside established "good cause" to set aside the default, according to the magistrate judge, because "the evidence indicates that the failure to respond was largely the result of a misunderstanding." The magistrate judge explained that Burnside had been represented by the A.G.'s Office in "dozens" of prior lawsuits, which suggested he "ordinarily expected [that office] to respond and did not realize that further inquiry was needed when he received personal service." And no further inquiry would have been needed but for a mistake by the A.G.'s Office, which initially and erroneously believed he was not entitled to state representation.

The magistrate judge concluded that this was not an "extreme situation" where a default judgment would be appropriate. The magistrate judge found that the A.G.'s

Office acted promptly upon learning of its mistake, that Burnside's failure to respond was not willful or culpable, that Rodriguez suffered no prejudice, and that Burnside could raise a meritorious defense. Accordingly, the magistrate judge vacated the clerk's default as to Burnside and denied Rodriguez's discovery requests as moot. The magistrate judge also noted that this Court had resolved Rodriguez's appeal at the end of March 2016, so the case could move forward once again.

Rodriguez filed a motion seeking reconsideration of the magistrate judge's order in June 2016, which the district court denied in October 2017. The court found that the magistrate judge's decision was not "clearly erroneous or . . . contrary to law," Fed. R. Civ. P. 72(a), and that the motion was untimely.

**B.**

We review for abuse of discretion a ruling on a motion to set aside a default. *See E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015).

The clerk must enter a party's default when the party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). "The court may set aside an entry of default for good cause." Fed. R. Civ.

7

P. 55(c).  "Good cause" is a "mutable" standard that is intended to be "liberal" but not "devoid of substance."  *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996).

In evaluating good cause, courts generally consider "whether the default was culpable or willful, whether setting it aside would prejudice the adversary, . . . whether the defaulting party presents a meritorious defense," and whether the defaulting party acted promptly to correct the default.  *Id.*  Moreover, "there is a strong policy of determining cases on their merits, and we therefore view defaults with disfavor."  *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).  But the defaulting party still must offer a "satisfactory reason" to set aside a default.  *African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999).

Here, the district court did not abuse its discretion by affirming the magistrate judge's decision to set aside the clerk's default as to Burnside.  The magistrate judge considered the proper factors, made findings supported by the record, and adequately explained the reasoning supporting the decision.  *See Surtain*, 789 F.3d at 1244.

Rodriguez contends that Burnside willfully failed to respond for months after being personally served.  But the magistrate judge found that Burnside's failure to respond to the complaint was not willful or culpable and was instead "largely the result of a misunderstanding."  According to the magistrate judge, Burnside's prior

8

litigation experience led him to expect that the A.G.'s Office would represent him, despite receiving personal service, but the A.G.'s Office originally did not appear on his behalf because of a mistake on its part. Because Burnside offered a plausible reason for his failure to timely respond, we see no error in the magistrate judge's finding that his conduct was not willful or culpable.

Moreover, the A.G.'s Office acted promptly upon learning of its mistake, moving to set aside the default just one day after it was entered, and the record supports the magistrate judge's findings that Rodriguez had suffered no prejudice and that Burnside had meritorious defenses. *See Compania Interamericana*, 88 F.3d at 951. Rodriguez fails to show he was harmed by the delay, such as a loss of evidence or increased difficulties in discovery. Because of Rodriguez's prior appeal of a ruling on injunctive relief and the stay of discovery, litigation was largely at a standstill while the issue of default was being actively resolved. So Burnside's delay in responding to the complaint and the related proceedings on the issue of default did not meaningfully lengthen the case or inhibit Rodriguez from litigating his claims.[2] As for meritorious defenses, Burnside succeeded at summary judgment on one claim of deliberate indifference, and he prevailed at trial on the other one.

---

[2] Rodriguez highlights a discovery request he made in connection with the default proceedings, suggesting that he was prejudiced because the magistrate judge denied that request as moot upon vacating the clerk's default. But discovery was stayed at that time, anyway, and Rodriguez could have renewed that discovery motion if he believed it was relevant to more than just the issue of default.

For these reasons, and given the "strong policy of determining cases on their merits," *In re Worldwide Web Sys., Inc.*, 328 F.3d at 1295, we affirm the district court's decision to set aside the clerk's default as to Burnside. We also note that Rodriguez fails to meaningfully address the court's finding that his request for review of the magistrate judge's order was untimely under Rule 72(a), Fed. R., Civ. P., which provides an independent, alternative ground for affirming on this issue. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.").

### III.

We next consider the denial of Rodriguez's motion to compel the production of x-rays and other medical records and his request for a court-appointed medical expert. Because these matters are related, we address them together.

### A.

The relevant background is as follows. At the outset of the case in January 2015, Rodriguez requested that the district court appoint counsel and an expert witness to represent him in the case. The magistrate judge denied the request for court-appointed counsel as "premature" and the request for an expert witness because "[t]he [c]ourt does not appoint expert witnesses in civil cases."

More than three years later, in April 2018, after the discovery period had expired, Rodriguez filed a motion to compel the production of certain medical documents, including x-rays of his hand and leg injuries. In that same motion, he also requested the appointment of an orthopedic expert witness, stating that expert testimony was needed for his claims against Burnside.

The defendants responded that they had searched through his medical file and provided him with the medical records that related to his claims. But they had not been able to locate the requested x-rays, they said, although they had found and produced "documents summarizing the results of the x-rays." They also opposed Rodriguez's request for an expert. Rodriguez replied that the defendants were hiding the x-rays, that the summaries were insufficient because they were written by Burnside, and that the court should impose sanctions.

On July 13, 2018, a magistrate judge issued an order denying the motion to compel. The magistrate judge noted that the defendants' counsel had informed Rodriguez "numerous times that the x-ray images are not in [his] medical file," and that Rodriguez had not shown some "reasonable articulable suspicion that the representation is false." Stating that courts could not "compel production of documents that do not exist," the magistrate judge denied the motion to compel.

The magistrate judge also denied Rodriguez's request for an expert. The judge offered four reasons for his ruling: (1) Rodriguez had "exercised great delay,"

waiting "until the eve of motions for summary judgment" to request an expert; (2) the defendants had not offered expert testimony in support of their motion for summary judgment; (3) the injuries at issue were not so complex as to require an expert; and (4) appointment of an expert was "extremely rare" and reserved for "exceptional circumstances," but this case was "an ordinary medical care deliberate indifference case, similar to dozens of others that are filed in this Court every year."

On July 29, 2018, Rodriguez submitted objections to the magistrate judge's order and requested "*de novo* review" by the district court. Rodriguez argued that the defendants should be required to provide sworn testimony that the documents did not exist or otherwise explain why the documents were not in his medical file. He also challenged the magistrate judge's reasons for not appointing an expert, noting that he had requested an expert witness at the outset of the case, and asserting that an expert witness was necessary to testify as to the requirements of orthopedic medical care to counter Burnside's expected testimony.

Both parties agree that the district court never expressly resolved Rodriguez's objections to the denial of his motion compel. Nor does it appear that the court expressly ruled on his objections to the denial of his request for an expert, even though the parties are silent as to that related matter.

**B.**

Because the district court failed to expressly rule on his objections to the magistrate judge's rulings, Rodriguez first argues that reversal is warranted both to remedy any constitutional problems caused by the court's failure to exercise *de novo* review and for the court to exercise its discretion and explain its decision.

Section 636 and Rule 72 define the power of magistrate judges. In general, magistrate judges may rule on nondispositive pretrial matters, such as discovery motions. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). District judges "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

Magistrate judges cannot rule on dispositive matters, however, absent consent of the parties. *See* 28 U.S.C. § 636(b)(1)(B), (c)(1). But they can assist by holding hearings and issuing "proposed findings and recommendations." *See* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b)(1). Upon timely objection, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). This "*de novo* review requirement is

13

essential to the constitutionality of section 636" because it ensures that the ultimate disposition of cases is reserved to the judgment of an Article III judge. *See Jeffrey S. by Ernest S. v. State Bd. of Educ. Of State of Ga.*, 896 F.2d 507, 512–13 (11th Cir. 1990); *see also Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009).

Rodriguez is incorrect that *de novo* review was required here. The magistrate judge issued orders on certain nondispositive pretrial matters related to discovery and the appointment of an expert. Under the framework described above, "a district court reviews a magistrate judge's ruling on non-dispositive matters under the clearly-erroneous or contrary-to-law standard." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 327 (11th Cir.), *cert denied*, 141 S. Ct. 251 (2020); *see* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "It was not required to perform a *de novo* review and neither are we." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019). And since the orders related to nondispositive matters, the constitutional concerns raised by Rodriguez are not present in this case. *See Williams*, 557 F.3d at 1291; *Jeffrey S.*, 896 F.2d at 512.

Nor does the lack of express rulings by the district court mandate reversal. "The denial of a motion by the district court, although not formally expressed, may be implied by the entry of final judgment (which is in effect an overruling of pending pretrial motions) or of an order inconsistent with the granting of the relief sought by

14

the motion." *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. July 1981).[3]

Here, we conclude that the denial of Rodriguez's pretrial motions to compel and for a court-appointed expert may be implied by the district court's entry of final judgment on his claims following a trial conducted without the court's appointment of an expert or its ordering of production of the requested x-rays. *See Local 472 of United Ass'n of Journeymen & Apprentices v. Ga. Power Co.*, 684 F.2d 721, 724 (11th Cir. 1982) ("In light of the [d]istrict [c]ourt's grant of summary judgment in favor of the defendants, we interpret the [c]ourt's silence regarding these [pretrial discovery] motions as a denial."). These actions were so inconsistent with the granting of relief sought by Rodriguez as to implicitly affirm the magistrate judge's denial of his motions. *See Addington*, 650 F.2d at 666. We therefore look to the magistrate judge's rulings for an explanation of the court's implicit decisions.

## C.

Turning to the substance of Rodriguez's requests, we review for abuse of discretion a district court's (here, implicit) affirmance of a magistrate judge's ruling on a discovery matter. *Jordan*, 947 F.3d at 1328. Whether to appoint an expert witness is likewise a discretionary decision. *Steele v. Shah*, 87 F.3d 1266, 1270–71

---

[3] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

(11th Cir. 1996). "[W]hen employing an abuse of discretion standard, we will leave undisturbed a district court's ruling unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005).

Here, Rodriguez has not shown an abuse of discretion concerning either the denial of his motion to compel or his request for a court-appointed expert. As to the x-rays, Rodriguez offers no reason to disbelieve the defendants' representation that the x-rays, among other requested documents, were not in his medical file and could not be produced. While he suggests that the district court should have required the defendants to offer some proof of that fact, not simply representations, he does not cite any authority establishing such a legal requirement. *Cf. Searock v. Stripling*, 736 F.2d 650, 654 (11th Cir. 1984) (relying on a party's "uncontradicted representation[s]" contained in "responses to the request for production, his responses to [a] motions for sanctions, and his motions for clarification and relief from the dismissal orders" to conclude that he made a good-faith effort to find the requested documents). And the district court's discretion over discovery issues is ordinarily quite broad. *See United States v. Cuya*, 964 F.3d 969, 970 (11th Cir. 2020) ("The district court has broad discretion to compel or deny discovery."). Accordingly, we cannot say that the court made a clear error of judgment or applied

16

the wrong legal standard by accepting the defendants' representation and not ordering production of the x-rays. *See Ameritas Variable*, 411 F.3d at 1330.

Concerning the appointment of an expert witness, Rule 706(a), Fed. R. Evid., provides that the district court may appoint an expert witness either on its own motion or the request of a party. "Such an appointment is especially appropriate where the evidence or testimony at issue is scientifically or technically complex." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1348 (11th Cir. 2003). And "[w]here a party requests the appointment of an expert to aid in evaluating evidence that is relevant to a central issue in the case, the court is obligated to fairly consider the request and to provide a reasoned explanation for its ultimate decision on the matter." *Id.*; *see Steele*, 87 F.3d at 1271. But we have observed that "we are unfamiliar with any set of circumstances under which a district court bears an affirmative obligation to appoint an independent expert." *Quiet Tech.*, 326 F.3d at 1348.

Here, the district court "fairly consider[ed]" the request and "provide[d] a reasoned explanation for its ultimate decision on the matter" by implicitly affirming the magistrate judge's decision. *Id.* The magistrate judge, in turn, cited several reasons for denying Rodriguez's request, including that he had delayed by waiting "until the eve of motions for summary judgment" to request an expert, that the defendants had not offered expert testimony, and that the injuries at issue were not

17

so complex as to require an expert.[4]  Thus, the court articulated explicit, principled reasons, which were supported by the record, for declining to exercise its discretion to appoint an expert.  *See id.* at 1349.  That an expert would have been helpful to Rodriguez's case is not, on its own, sufficient to show that the failure to appoint one constituted an abuse of discretion.  *See id.*  The abuse-of-discretion standard allows for a range of choice absent a legal error or a clear error of judgment, which Rodriguez has not shown here.  *See Ameritas Variable*, 411 F.3d at 1330.  We therefore affirm on this issue as well.

## IV.

Finally, Rodriguez asserts that this Court sitting *en banc* should hold that punitive damages are available under the PLRA to a prisoner who has not suffered physical injury.  We have done just that.  On April 9, 2021, this Court sitting *en banc* held that the PLRA "does not bar *punitive* damages in the absence of physical injury," overruling prior precedent to the contrary.  *Hoever v. Marks*, ___ F.3d ___, No. 17-10792, 2021 WL 1326618, at *3 (11th Cir. Apr. 9, 2021) (*en banc*).  But this *en banc* decision does not warrant a remand in this case because the jury did not

_____

[4] Rodriguez disputes any "delay" and notes that he filed a request for an expert early in the case, which the magistrate judge denied.  But he cannot challenge that prior decision directly because he did not timely object to it, *see* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."), the first request was premature in any case, and the magistrate judge's timeliness concerns are still valid given the gap of more than three years between the two requests for a court-appointed expert.

18

reach the issue of damages on any of Rodriguez's claims and Rodriguez does not suggest that this issue is an independent basis for reversal.

## V.

In sum, we affirm the judgment against Rodriguez.

**AFFIRMED.**